ALBANY,
August, 1810.

JAMES
v.
LE ROY.

That was essential. (*Goodtitle* v. *Herbert*, 4 *Term Rep.* 680.) The motion to set aside the nonsuit must be denied.

Motion denied.

———————

———⧼⊛⧽———

JAMES *against* LE ROY, BAYARD, and M'EVERS.

Where an *apprentice* is employed, without the knowledge or consent of his master, the master is entitled to all his earnings, whether the person who employs him, did, or did not know that he was an *apprentice*. But in the case of a hired servant, the employer must have notice of his being the servant of another, to make him answerable.

Where A. an apprentice, ran away from his master, in *New-York*, and entered on board of a ship, and signed articles, by which he engaged to perform the whole voyage, and to forfeit his wages in case of desertion or embezzlement; and during the voyage, he deserted, having been guilty of embezzlement; it was held, that the master was entitled to recover his whole earnings, from the ship-owners, during the time he was on board, without any deduction for wages advanced to the apprentice, though neither the owners nor captain knew that he was an apprentice.

THIS was an action of *assumpsit*, for work and labour of the plaintiff, performed by his *apprentice*, in navigating a ship, called the *Maryland*, belonging to the defendants, on a voyage from *New-York*, round *Cape Horn*, thence to *Canton*, and back to *New-York*.

The cause was tried before Mr. Justice *Yates*, on the 14th day of *December*, 1809, at the *New-York Sittings*. The apprentice, *Thomas Shea*, was bound to the plaintiff, by indentures, for a term, of which about two years were unexpired, at the commencement of the voyage above mentioned, *Shea* being then of the age of nineteen years. *Shea* shipped on board the vessel, for the voyage, as an ordinary seaman, in *August*, 1805, and the wages were about twelve dollars *per* month. The ship sailed on her voyage, in *September*, and *Shea* continued on board, until some time in the winter of the year 1807, when the ship, being on the coast of *California*, and he having been sent on shore, with the carpenter, to repair a boat, belonging to the people with whom they were trading, after working on shore two or three days, they both disappeared, and did not, afterwards, return to the ship.

The defendants then produced the shipping articles of the vessel, for the above described voyage, and of

4

fered to prove that the same had been duly subscribed by *Shea*, as an ordinary seaman; that they were in the form prescribed by the act of congress; that the seamen thereby bound themselves to perform the whole voyage, and agreed, in case of desertion or embezzlement, to forfeit all their wages.

The defendants also offered to prove, by the ship's logbook, which was produced, and by oral testimony, that *Shea* deserted the ship, on the coast of *California*, taking with him all the carpenter's tools, belonging to the ship, and that he had committed various acts of embezzlement during the voyage; but the evidence was objected to by the plaintiff's counsel, and overruled by the judge, on the ground, that *Shea*, being an infant, could not bind himself by the shipping articles, nor by any act of his, defeat the plaintiff's right to recover a reasonable compensation for his actual services.

The defendants also offered to prove the payment of divers sums of money to *Shea*, in advance, and on account of wages, whilst on board the vessel; but this evidence was also objected to, and overruled, upon the same principle.

The plaintiff's counsel produced a newspaper, printed in *New-York*, on the 31st day of *August*, 1805, by which *Shea* was advertised by the plaintiff, as a runaway apprentice, and one cent was offered for his apprehension; but no evidence was offered of any knowledge in the defendants, of the advertisement, or of the fact of *Shea's* being an apprentice. The mate, and other persons on board, being interrogated to this point, declared that they had no such knowledge; but two of the seamen declared, that there had been something said among the crew, respecting *Shea's* apprenticeship, after he had been some time at sea.

It appeared that *Shea* was shipped on the 17th day of *August;* and that for three weeks previous to the ship's sailing, he was daily on shore, being one of the crew at

tached to the jolly-boat, which was going backward and forward from the ship to the wharf; that the ship lay in the *Hudson* river, and the plaintiff resided on the *East River*.

It further appeared, that *Shea's* services, whilst he continued on board the ship, were worth about six dollars *per* month, and that he remained on board about 17 months.

Upon this evidence, the judge directed the jury, that the plaintiff was entitled to recover for the actual services of the apprentice, according to their fair value, without reference to the contract, and without deduction, on account of any payments made to him; and that 17 months appearing to be the time, and six dollars *per* month, the value of those services, the plaintiff was entitled to recover at that rate. The jury, accordingly, found a verdict for the plaintiff, for 102 dollars.

A motion was made, on the part of the defendants, for a new trial, which was submitted to the court, on the above case, without argument.

*Per Curiam.* This is the case of an *apprentice*, employed by the defendants, without the consent or knowledge of his master. The master is entitled to his earnings, whether the defendants did, or did not know that he was an apprentice. (1 *Vez.* sen. 83. 48. 1 *Salk.* 68. 1 *Comyn on Contracts*, 224, 225.) In case of a hired servant, the employer must have notice, to make himself answerable. (2 *Lev.* 63. 1 *Black. Comm.* 429.) The decision, at the circuit, was correct, and the motion for a new trial is denied.

Rule refused.(*a*)

(*a*) See *Harg.* note (1). *Co. Litt.* 117. a.